J. S55012/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.C.W., III, | : | IN THE SUPERIOR COURT OF |
| A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.C.W., III, | : | |
| | : | No. 1997 WDA 2014 |
| Appellant | : | |

Appeal from the Order Entered November 18, 2014,
in the Court of Common Pleas of Bedford County
Criminal Division at No. CP-05-JV-0000093-2013

| | | |
|---|---|---|
| IN THE INTEREST OF: J.C.W., III, | : | IN THE SUPERIOR COURT OF |
| A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.C.W., III, | : | |
| | : | No. 1998 WDA 2014 |
| Appellant | : | |

Appeal from the Order, November 18, 1014,
in the Court of Common Pleas of Bedford County
Criminal Division at No. CP-05-JV-0000092-2013

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., AND STRASSBURGER, J.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED OCTOBER 30, 2015**

    This is an appeal from the dispositional order entered by the Court of

Common Pleas of Bedford County in these consolidated cases.[1] After careful

review, we affirm.

---

* Retired Senior Judge assigned to the Superior Court.

[1] On January 9, 2015, this court consolidated ***sua sponte*** the separate appeals filed by appellant from the dispositional order entered November 18, 2014. The record indicates the juvenile court disposed of both pending adjudications against appellant with one order entered on November 18, 2014, and that counsel, in an abundance of caution, filed two timely notices of appeal on appellant's behalf.

On February 21, 2014, appellant, J.C.W., III, a juvenile, completed and signed an admission form at No. JV-92 & 93 for the year 2013 in the Bedford County Court of Common Pleas, Juvenile Division. The admission form admitted to rape of a child at each of the aforementioned cases.[2] By agreement of the parties, findings of fact were entered by the trial court on February 21, 2014, to the extent that those acts would constitute rape of a child, felonies of the first degree, if committed by an adult. Adjudication and disposition were then deferred. Prior to the dispositional hearing, appellant spent 16 months in the Raphael House Sexual Offender Male Program of Adelphoi Village where he completed the program and was discharged home. (Notes of testimony, 9/12/14 at 11.)

Hearings took place on June 6, 2014 and September 12, 2014. Experts testified regarding the issue of appellant's continued need for treatment, supervision, or rehabilitation. At the conclusion of the September 12th hearing, the trial court adjudicated appellant a delinquent child in need of further supervision, treatment, or rehabilitation. (**Id.** at 79.) Appellant's counsel filed a post-dispositional motion at both docket numbers. Argument was held on November 6, 2014, and the trial court denied the post-dispositional motions. (Notes of testimony, 11/6/14 at 12.) This timely appeal followed.

---

[2] The record indicates appellant sexually assaulted his eight-year-old half-brother between March 1, 2011 and March 31, 2011. Appellant also admitted to sexually assaulting his three younger female cousins.

Appellant raises one issue for our review:

I.     Whether the trial court erred in denying post
       dispositional motions file[d] by counsel and by
       holding there was sufficient evidence to find
       [appellant] was in need of further treatment,
       supervision or rehabilitation and therefore a
       delinquent child?

Appellant's brief at 4.

Our standard of review of dispositional orders in juvenile proceedings

is settled.   The Juvenile Act grants broad discretion to juvenile courts in

determining appropriate dispositions.     *In re R.D.*, 44 A.3d 657, 664

(Pa.Super. 2012), *appeal denied*, 56 A.3d 398 (Pa. 2012).   In addition,

"[a] petition alleging that a child is delinquent must be disposed of in

accordance with the Juvenile Act.   Dispositions which are not set forth in the

Act are beyond the power of the juvenile court."   *Id.* (citation omitted).   We

will disturb a juvenile court's disposition only upon a showing of a manifest

abuse of discretion.   *Commonwealth v. B.D.G.*, 959 A.2d 362, 366-367

(Pa.Super. 2008).

Indeed, a purpose of the Juvenile Act is as follows:

Consistent with the protection of the public interest,
to provide for children committing delinquent acts
programs of supervision, care and rehabilitation
which provide balanced attention to the protection of
the community, the imposition of accountability for
offenses committed and the development of
competencies to enable children to become
responsible and productive members of the
community.

42 Pa.C.S.A. § 6301(b)(2). "This section evidences the Legislature's clear intent to protect the community while rehabilitating and reforming juvenile delinquents." *In the Interest of J.C.*, 751 A.2d 1178, 1181 (Pa.Super. 2000).

In *In the Interest of M.W.*, 39 A.3d 958 (Pa. 2012), our supreme court was called upon to interpret the Juvenile Act, 42 Pa.C.S.A §§ 6301-6365, to determine the proper procedure that a juvenile court must follow before reaching a final delinquency adjudication. After reviewing the statutory language and the applicable procedural rules, our supreme court held that, in order to adjudicate a child delinquent, the juvenile court must "(1) determine that the juvenile has committed a delinquent act [beyond a reasonable doubt], *and* (2) determine that the juvenile requires treatment, supervision, or rehabilitation." *M.W.*, 39 A.3d at 966 (emphasis in original). A determination that a child has committed a delinquent act does not, on its own, warrant an adjudication of delinquency. *Id.* "This is so even where the delinquent act constitutes a felony because, while the commission of such an act presumptively supports a finding that the juvenile is in need of treatment and supervision (and thus can be adjudicated delinquent), the juvenile court must still make that finding after allowing for other evidence." *Id.* at 966 n.9, citing 42 Pa.C.S.A. § 6341(b).

Instantly, appellant is contesting the determination made by the trial court that he is in need of treatment, supervision, or rehabilitation.

Appellant relies on the testimony of his expert, Dr. Rene William Tallichet, a licensed psychologist, who testified he evaluated appellant for a period of approximately 5½ hours over the course of two days. (Notes of testimony, 9/12/14 at 8.) During that time, Dr. Tallichet interviewed and tested appellant. (*Id.*) Dr. Tallichet administered the Millon Adolescent Clinical Inventory test on July 14, 2014. (*Id.* at 21.) Dr. Tallichet concluded, based on the test results, that appellant was not likely to re-offend. (*Id.* at 23.)

The next test administered by Dr. Tallichet was the Juvenile Sex Offender Assessment Protocol ("J-SOAP"). This test measured appellant's sexual drive and sexual preoccupation and impulse and antisocial behavior. (*Id.* at 24-25.) The test results indicated appellant was unlikely to re-offend. (*Id.* at 26.)

According to Dr. Tallichet, there was no evidence of any kind of major affective disorder that would reveal any psychotic symptomatology. Dr. Tallichet also stated there was also no evidence of any thought disorder or disturbance in thinking that would compromise appellant's reality testing, his perceptions, or his judgment. (*Id.* at 10.) Additionally, there was no evidence of anything that would be indicative of a dissociative disorder. (*Id.*) Dr. Tallichet concluded that there was no need to mandate any further therapy or treatment, and any therapy or treatment should be elective. (*Id.* at 33.)

The Commonwealth presented Herbert Hays as its expert. Mr. Hays stated he was retired but served on the Pennsylvania Sexual Offenders Assessment Board. (*Id.* at 41.) He chose to perform a forensic assessment on appellant rather than a psychological or psychiatric assessment because this case concerned criminal behavior in a juvenile. (*Id.* at 41-42.) Hays testified he interviewed appellant on two occasions, July 21, 2014 and July 29, 2014. (*Id.* at 42.) He also reviewed the documents provided by Adelphoi Village.[3] (*Id.*) Hays stated he used two different tests to evaluate appellant, and he concluded appellant should be enrolled in a community-based sex offender treatment program that could evaluate the treatment appellant received at Adelphoi Village and how effective it was, and monitor whether appellant is complying with his relapse prevention plan. (*Id.* at 50-51.)

The September 12, 2014 hearing was essentially a battle of the expert witnesses, with appellant's witness arguing that further treatment, supervision, and/or rehabilitation was not necessary and the Commonwealth's expert arguing that it was necessary. The Honorable Thomas S. Ling explained why he chose to give greater weight to the Commonwealth's expert:

---

[3] The Raphael House, Adelphoi Village, recommended that appellant continue to see a regular therapist for continued counseling for sexual issues and family dynamics, as well as meet monthly with a psychiatrist for mental health and medication updates. (Discharge summary, 6/18/14 at 8.)

> [The Court]: [G]iven the seriousness of the offenses, the information provided by [Adelphoi Village] recommending further outpatient counseling, and Mr. Hays' support for that, it appears to me it's neither in [appellant's] nor society's best interest that further supervision and treatment be simply left to his discretion and that of his family's. I agree with Dr. Tallichet and Mr. Hays and [Adelphoi Village] that [appellant] has made much progress. But I don't believe it's sufficient at this point that I can find that he is not in need of supervision or further treatment.
>
> Therefore, I find he's a delinquent child in need of further supervision, treatment, and rehabilitation. As Dr. Tallichet noted, supervision is somewhat different than treatment. I concur in his agreement [sic]. I think he made a fine assessment. The chance for re-offending is slight, but I think there is a need for continued supervision and I believe based on all the testimony in the case outpatient counseling would be desirable.

*Id.* at 79.

Our supreme court has stated that, "a jury or a trial court can believe all or a part of or none of a defendant's statements, confessions or testimony, or the testimony of any witness." *Commonwealth v. Hornberger*, 270 A.2d 195, 197 (Pa. 1970). This includes expert witnesses. In this delinquency case, the trial judge heard both experts and agreed with the Commonwealth's expert's recommendation that further supervision or treatment should not be left to appellant's family's discretion, or "elective" as appellant's expert recommended. Judge Ling, sitting as fact-finder, was free to do so. *See Commonwealth v. Puksar*, 951 A.2d 267, 176 (Pa. 2008) ("The expert testimony offered at trial by both sides

amounted to a battle of the experts, with the [fact-finder] as the ultimate referee based upon its assessment of the credibility of the experts.").

Clearly, Judge Ling was cautiously optimistic regarding the likelihood that appellant would not re-offend, but due to the seriousness of appellant's delinquent acts, rape of a child, the judge was unwilling to allow appellant's family to determine when or what further treatment he needed. This determination is reasonable and we are bound by it. Accordingly, we affirm the dispositional order in both cases.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2015