J-S14023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL ANTHONY BALDASSANO | : | |
| | : | |
| Appellant | : | No. 1040 MDA 2020 |

Appeal from the Judgment of Sentence Entered March 11, 2020
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0000734-2019

BEFORE: BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.: **FILED JUNE 23, 2021**

Appellant Michael Anthony Baldassano appeals from the Judgment of Sentence[1] imposed after a jury convicted him of one count each of Terroristic Threats and Stalking, and three counts of Harassment.[2] He challenges the sufficiency and weight of the evidence. After careful review, we affirm.

We glean the facts and procedural history from the certified record, including the trial court's Opinion denying Appellant's Post-Sentence Motion. **See** Tr. Ct. Op., dated July 21, 2020. Appellant and the victim, E.B., became friends while attending Temple University in the mid-2000s and working

---

[1] Although Appellant purported to appeal from the Order denying his Post-Sentence Motion, the Appeal properly lies from the Judgment of Sentence. **See Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (stating that in a criminal action, an "appeal properly lies from the judgment of sentence made final by denial of post-trial motions.").

[2] 18 Pa.C.S.§ § 2706(a), 2709.1(a)(2), and 2709(a)(4), (a)(5) and (a)(6), respectively.

together in the library. At some point, Appellant wanted the relationship to become romantic. E.B. tried gently to rebuff him but eventually told him directly that she was not interested in that sort of relationship with him. After E.B. graduated in 2008, she went once with Appellant to a baseball game as a friend, but then moved away from the area. E.B. did not communicate with Appellant after that. In 2016, E.B. moved to Lebanon County where she lived with her two children and her husband.

In May 2016, Appellant began calling E.B.'s cell phone in the early morning hours from a number with no caller ID. Frequently, he would simply hang up. However, over the next two years, Appellant left approximately 25 voicemail messages with threatening and foul language in which he indicated he knew her address, made comments about her children and husband, and threatened to kill her. E.B. recognized Appellant's voice. In addition to telephone communications, Appellant posted pictures of himself with E.B. at the 2008 baseball game on social media accounts that he had set up in E.B.'s name.

E.B. contacted the Annville Township Police Department twice to alert them to Appellant's stalking and harassment occurring by telephone and on social media, but police officers told her the nature of the harassment and threats was not enough for a criminal investigation. Becoming increasingly fearful, she began to log the telephone calls and save Appellant's voicemails. On her birthday in August of 2018, E.B. received approximately 80 hang up

calls from a blocked number that police later determined was Appellant's cell phone number.

In September 2018, E.B. again contacted the police department. After an investigation, during which Officer Guy Robinson, Sr., spoke with Appellant regarding his behavior over the previous two years, the Commonwealth charged Appellant with one count each of Terroristic Threats and Stalking, and three counts of Harassment.

Appellant's trial began on January 27, 2020. The Commonwealth presented testimony from E.B., E.B.'s now-ex-husband, and Officer Guy Robinson, Sr. During E.B.'s testimony, the court admitted audio recordings of approximately 30 voicemails that Appellant had left on E.B.'s cell phone voicemail. Officer Robinson testified regarding obtaining records from E.B.'s cell phone company which indicated that each of the threatening calls and hang ups had come from Appellant's cellphone. In addition, Officer Robinson testified that during his recorded interview with Appellant, Appellant told him that he hated E.B., and admitted that he called and left the voicemail messages to "get under her skin and believes that he finally was able to do that." N.T. Trial, 1/28/2020, at 69. The Commonwealth played portions of Appellant's videotaped interview with Officer Robinson. The court admitted

the telephone records referenced by Officer Robinson. Appellant presented no witnesses.[3]

The jury found Appellant guilty of the above crimes. On March 11, 2020, the court sentenced him to a term of thirty days' to four years' incarceration. The court directed that Appellant be immediately paroled at the expiration of his minimum sentence and ordered Appellant to have no contact, direct or indirect, with E.B. or her family.

Appellant filed a Post-Sentence Motion, which the court denied on July 21, 2020. Appellant timely appealed and filed a Pa.R.A.P. 1925(b) Statement. In lieu of a Rule 1925(a) Opinion, the trial court relied on its July 21, 2020 Opinion denying Appellant's Post-Sentence Motion.

Appellant presents the following questions for our consideration:

1. Did the trial court err in ruling that the Commonwealth presented evidence at trial that was sufficient to sustain a conviction under 18 Pa.C.S. § 2706(a)(1)?

2. Did the trial court err in ruling that the Commonwealth presented evidence at trial that was sufficient to sustain a conviction under 18 Pa.C.S. § 2709.1(a)(2)?

3. Did the trial court err in ruling that the jury's verdict was not against the weight of the evidence so as to warrant a new trial under Pa.R.Crim.P. 607?

Appellant's Br. at 6.

---

[3] Appellant proffered one photograph of Appellant and E.B. at the 2008 baseball game, which the court admitted during Appellant's counsel's cross-examination of E.B. N.T., 1/28/2020, at 44-45.

- 4 -

Appellant's first two issues challenge the sufficiency of the evidence supporting his convictions for Terroristic Threats and Stalking. "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Walls***, 144 A.3d 926, 931 (Pa. Super. 2016) (citation omitted). "In assessing Appellant's sufficiency challenge, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that the Commonwealth proved [each] element of the crime beyond a reasonable doubt." ***Commonwealth v. Ansell***, 143 A.3d 944, 949 (Pa. Super. 2016) (citation omitted). "The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." ***Commonwealth v. Ford***, 141 A.3d 547, 552 (Pa. Super. 2016) (citation omitted).

**Issue 1 – Terroristic Threats**

Appellant first asserts that the Commonwealth failed to prove that he "seriously made any of these threats or that he had any intention of executing the same." Appellant's Br. at 14. He contends that his single statement to investigators that he hated E.B. and "merely 'wanted to get underneath her skin" is not enough to support the *mens rea* element of the Terroristic Threats offense. ***Id***. This argument garners no relief.

A person commits the crime of Terroristic Threats if he "communicates, either directly or indirectly, a threat to [] commit any crime of violence with intent to terrorize another" or "to cause terror … with reckless disregard of the risk of causing such terror[.]" 18 Pa. C.S. § 2706(a)(1), (a)(3). "The elements necessary to establish a violation of the terroristic threats statute are: (1) a threat to commit a crime of violence; and (2) that the threat was communicated with the intent to terrorize." *Walls*, 144 A.3d at 936 (internal brackets and citation omitted). "The purpose of [Section 2706] is to impose criminal liability on persons who make threats which seriously impair personal security[.] It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger." 18 Pa.C.S.A. § 2706 cmt.

"Neither the ability to carry out the threat nor a belief by the persons threatened that it will be carried out is an essential element of the crime. Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." *In re J.C*, 751 A.2d 1178, 1180–81 (Pa. Super. 2000) (citation omitted). We consider the totality of the circumstances to determine if Appellant had the necessary *mens rea*. *Commonwealth v. Reynolds*, 835 A.2d 720, 730 (Pa. Super. 2003). The offense does not require that the actor intended to carry out the threat, only that he intended to terrorize. *Commonwealth v. Anneski*, 525 A.2d 373, 375 (Pa. Super. 1985).

In denying Appellant's Post-Sentence Motion, the trial court addressed Appellant's attempt to minimize his years of threatening behavior as follows:

> In this case, [Appellant] uttered threats to E.B. that fell within the ambit of Pennsylvania's Terroristic Threats Statute. His threats implicated crimes of violence, up to and including homicide. While there is no evidence that [Appellant] had an intent to carry out the threats, the seriousness and serial nature of the threats were certainly intended to cause "extreme fear" on the part of E.B. At a minimum, those threats were uttered with reckless disregard for the possibility that such fear would result.
>
> There is a line between a statement intended to "bother" or "get under the skin" of another person and a threat uttered with the intent to cause terror or with reckless disregard for the possibility that terror would arise. In the view of this [c]ourt, [Appellant's] serial threats against the life of E.B. crossed that line. We conclude with no hesitation that more than sufficient evidence was presented to establish the crime of Terroristic Threats.

Tr. Ct. Op., filed 7/21/20, at 9.

We agree with the trial court that the Commonwealth presented sufficient evidence to establish that Appellant intended to terrorize E.B. with threats of violence. In addition to hearing Appellant's admission during his videotaped interview with Officer Robinson, *see* N.T., 1/28/2020, at 69, the jury listened, during E.B.'s testimony, to approximately 30 video recordings of voicemail messages that Appellant had left on E.B.'s cell phone beginning in May 2016 and ending in December 2018. *Id*. at 22-39. E.B. recognized his voice each time. In many of those messages, Appellant indicated he knew where she lived, and knew her daughter's and husband's names. For example, at 1:47 AM on October 11, 2017, Appellant left a message saying that E.B. had "better keep an eye on [her daughter], you f***ing c**t[.]" *Id*. at 31.

On December 6, 2017, at 2:27 AM, Appellant left a voicemail message saying "I'm going to slice your throat . . . I'm going to kill you." *Id.* at 32. E.B. testified that after receiving that voicemail, she felt "terrified." *Id.* at 33. Two weeks later, Appellant left a message telling her where she lived and stating that he is coming to see her. *Id.* On February 10, 2018, he left a message at 2:44 AM saying "I want you to die – dead. I want you to – I want you dead. I want you to die, die, die." *Id.* at 34. Appellant subsequently left a voicemail message saying "I've had eight years to figure out how I'm going to kill you. I think I know." *Id.* at 36. At 5:03 AM on July 1, 2018, Appellant left a message saying "I'll get you to answer, you f***ing c**t. I'll f***ing kill you." *Id.* at 37. E.B. testified that she went to the police department in September 2018 because she felt her life and her children's lives were in jeopardy. *Id.* She continued to receive threatening and harassing voicemail messages from Appellant through the end of December 2018.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that the plethora of evidence cited above showing Appellant's relentless campaign of threats of violence communicated over a two-year period demonstrate that Appellant communicated those threats with the intent to terrorize E.B. While Appellant attempts to minimize his action as merely getting "under her skin," his choice of offensive and violent language speaks volumes that Appellant intended to terrorize E.B. and, in fact, succeeded. Whether Appellant intended to follow through with his

threats is irrelevant as the intent element of the Terroristic Threats statute pertains to causing fear in the mind of the recipient of the threats. Accordingly, Appellant's claim of insufficient evidence is without merit.

**Issue 2 – Stalking**

Appellant next baldly asserts that the evidence was insufficient to convict him of stalking because his statement to Officer Robinson—that he "really wanted to get underneath her skin"—was the only evidence presented of the *mens rea* element of the stalking offense. Appellant's Brief at 15. He also asserts, without reference to supporting case law, that E.B. "waited over two years after the alleged threatening conduct began before she contacted the police" which "does not demonstrate that she had a reasonable fear of bodily injury or was caused substantial emotional distress as required by 18 Pa.C.S. § 2709.1(a)(2)." *Id*. at 15-16. This claim warrants no relief.

A person is guilty of the crime of Stalking if, among other things, he "engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person." 18 Pa.C.S. 2709.1(a)(2). The Crimes Code defines "communicates" as conveying "a message without intent of legitimate communication or address by oral, nonverbal, written or electronic means, including telephone, electronic mail, Internet, facsimile, telex, wireless communication or similar transmission." 18

Pa.C.A. 2709.1(f).  *See*, *e.g.*, *Commonwealth v. Sexton*, 222 A.3d 405, 419 (Pa. Super. 2019) (concluding multiple inscriptions demonstrate course of conduct intended to cause person substantial emotional distress, and noting the appellant succeeded in causing emotional distress).

Appellant's repeated communications demonstrate that the Commonwealth presented sufficient evidence to convict Appellant of Stalking. The jury heard audio recordings of 30 voicemail messages Appellant left for E.B. and testimony about 80 hang up calls on E.B.'s birthday.  The sheer quantity of the communications demonstrates a course of conduct; the substance of the repeated messages demonstrates an intent to cause substantial emotional distress; and Appellant's own admission that he was trying to "get under her skin," and believed he did, proves that he had no intent of legitimate communication.  Accordingly, Appellant's claim of insufficient evidence supporting the Stalking conviction fails.

**Weight of the Evidence**

Appellant next asserts that the verdict was "contrary to the weight of the evidence."  Appellant's Brief at 17.  In a conclusory two-paragraph "argument," Appellant's sole reference to anything remotely connected to a weight claim is his acknowledgment that two witnesses testified.  *Id*.  He then asserts that "there was not a single piece of evidence" showing that he ever intended "to carry out any of the alleged threats or that he acted with an intent to terrorize or to place [E.B.] in reasonable fear of bodily injury, as

- 10 -

required by [the statutes]." *Id*. at 18. Appellant cites boilerplate case law relevant to the trial court's review of a request for a new trial, but he fails to develop his weight challenge with reference to any relevant case law and a legal analysis. Because Appellant "failed to present in his brief any meaningful argument in support of his weight claim, it is waived." ***Commonwealth v. Hall***, 199 A.3d 954, 962 (Pa. Super. 2018). ***See Commonwealth v. Gooding***, 649 A.2d 722, 725 (Pa. Super. 1994) (holding that "when an appellant fails to carry forward, or is indecipherably vague in, argumentation upon a certain point in his appellate brief, that point is waived.").

Having found no merit to Appellant's sufficiency challenges, and waiver of his weight claim, we affirm Appellant's Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/23/2021