J-S44007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: S.W., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.W., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 403 EDA 2023 |

Appeal from the Dispositional Order Entered January 13, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-JV-0000347-2022

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 04, 2024**

Appellant, S.W., appeals from the dispositional order[1] entered on

January 13, 2023, placing him in a residential facility following his adjudication

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  Appellant, a male born on October 11, 2004, was seventeen years old at the time of the incident at issue.  From our cursory review of the record, Appellant was not automatically charged as an adult because he was not accused of murder, was not alleged to have committed the crimes at issue with a deadly weapon, and/or did not have prior adjudications of delinquency. **See** 42 Pa.C.S.A. §§ 6302, 6322, and 6355.  Moreover, as will be discussed below, we note that the juvenile court entered an order of disposition on December 9, 2022.  On January 13, 2023, however, the juvenile court entered a second dispositional order, modifying the original order and committing Appellant to a residential facility.  When a dispositional review order changes the status quo, such as changing the place of commitment, the review order rather than the initial order of disposition, is appealable.  **See**, **e.g.**, **In re M.D.**, 839 A.2d 1116, 1121 (Pa. Super. 2003) ("[A] committed Juvenile does not have the right to appeal from a review order that continues his commitment in the same manner and place and that maintains the status quo"); **compare Matter of K.G.**, 2018 WL 4907809 at *5 (Pa. Super. 2018)
*(Footnote Continued Next Page)*

of delinquency for receiving stolen property, unauthorized use of a motor vehicle, robbery – threat of serious bodily injury, robbery of a motor vehicle, theft by unlawful taking – moveable property, and conspiracy[2] entered on December 9, 2022.  We affirm.

We briefly summarize the facts of this case as follows.  On March 12, 2022, the victim in this matter was sitting in her vehicle outside of the Acme Markets on South Street in Philadelphia, Pennsylvania.  While waiting for her adult daughter who was shopping, the victim fell asleep and awoke to Appellant and others opening the vehicle doors and telling her to get out of the car.  Initially, the victim refused and told them to leave.  Appellant and his accomplices told the victim to get out of the car and someone threatened to shoot her.  An individual positioned near the passenger side seat grabbed the victim by her arm.  Eventually, the victim relented, alighted from her vehicle, and Appellant and the other individuals entered her vehicle and drove away.  On March 13, 2022, the police responded to a single car accident on West Olney Avenue in Philadelphia, Pennsylvania.  When the police arrived on

---

(unpublished memorandum) ("[W]e agree with [K.G.] that the [review order] is appealable because 'it modifies a previously entered final [o]rder of disposition' … While it did continue his commitment in the same manner, it did not continue his commitment in the same place, and thus the juvenile court did not maintain the status quo") (internal citation omitted).  Here, the January 13, 2023 order modified the December 9, 2022 order and changed the status quo by committing Appellant to a residential facility.  As such, we conclude that Appellant's appeal properly lies from the January 13, 2023 order, as reflected in the caption.

[2]   18 Pa.C.S.A. §§ 3925(a), 3928(a), 3701(a)(1)(ii), 3702(a), 3921(a), and 903, respectively.

scene, they observed the victim's car completely destroyed from a collision with a traffic pole and apprehended Appellant, the only occupant, from the front seat of the vehicle.

Initially, on March 15, 2022, the Commonwealth charged Appellant with receiving stolen property, unauthorized use of a motor vehicle, and conspiracy. On June 16, 2022, after the completion of discovery, a juvenile court hearing officer held a pre-trial hearing and Appellant was given in-home detention. On July 5, 2022, Appellant appeared for an adjudicatory hearing. The Commonwealth requested the case be continued, but agreed with the trial court that Appellant be discharged from in-home detention and placed on Global Positioning System (GPS) monitoring with home restrictions. On July 20, 2022, the Commonwealth filed a motion to amend the juvenile petition to include robbery – threat of serious bodily injury, robbery of a motor vehicle, and theft by unlawful taking – moveable property. The Commonwealth also sought to change the grading of the conspiracy charge from a third-degree felony offense to a first-degree felony offense.

Thereafter, as the trial court recounts:

On August 4, 2022, [Appellant] appeared before [the trial court] for an adjudicatory and dispositional hearing. The juvenile petition was amended [as requested by the Commonwealth]. [Appellant] tendered an open admission to all charges. The trial court conducted a full colloquy on the record and found [Appellant] had tendered his admission knowingly, voluntarily, and intelligently and accepted the admission. [Appellant] was placed on deferred adjudication. [Appellant] was ordered to pay restitution to the [victim] and hand-write an apology letter, attend anger management, and attend school with no unexcused

- 3 -

absences, lateness or suspensions. [Appellant] was placed on interim probation and remained subject to GPS monitoring with [home] restrictions, with permission to work, but [Appellant agreed] to be held in custody [for] the first violation [of these terms].

On September 6, 2022, [Appellant] appeared before [the trial court] for a deferred adjudicatory hearing. [Appellant] remained subject to GPS monitoring, but with a curfew rather than [home] restrictions. He was also ordered to continue attending anger management and continue with interim probation, and pay the outstanding restitution.

On October 25, 2022, [Appellant] appeared before a [hearing officer] for a deferred adjudicatory review hearing. [Appellant] remained on GPS monitoring with a curfew and remained on interim probation. [Appellant's] [p]robation [o]fficer was ordered to investigate [alleged] GPS violations and appear at the next [hearing].

[Thereafter, o]n November 3, 2022, [] a motion to amend or review [Appellant's delinquency] order [was filed] due to GPS violations.

On November 4, 2022, a hearing was held before a [hearing officer]. [Appellant] failed to appear, and a bench warrant was issued against him.

On November 22, 2022, [Appellant] appeared before a [hearing officer]. The bench warrant was lifted, and [Appellant] was [ordered] to continue on interim probation. [Appellant] was also to remain held in secure detention at the Philadelphia Juvenile Justice Services Center (PJJSC).

On November 30, 2022, a hearing was held before [the trial court]. [Appellant] was not brought to court due to [a] COVID-19 quarantine at PJJSC. The trial court ordered [Appellant] be brought down for the next [hearing]. [Appellant] remained on interim probation and remained in secure detention at the PJJSC. The case was continued.

On December 9, 2022, [Appellant] appeared before [the trial court]. [Appellant] was adjudicated delinquent and in need of treatment, supervision, or rehabilitation. [Appellant] was ordered to remain in secure detention at the PJJSC, with [the p]robation [department] to plan for all alternatives. [Appellant] was ordered

to complete a Behavioral Health Evaluation (BHE). [Appellant] was ordered to pay court costs. The PJJSC was ordered to enroll [Appellant] in Hall Mercer Therapeutic Services, and ensure [Appellant] was transported to the Criminal Justice Center when needed. The Philadelphia School District was ordered to enroll [Appellant] in an on-grounds school at the PJJSC.

On December 29, 2022, [Appellant] appeared before the [trial court court] for a dispositional hearing. The previously ordered BHE had not been completed and was re-ordered. [Appellant] was ordered to receive therapy from Hall Mercer and be enrolled in on-ground school forthwith, while remaining in secure detention at the PJJSC. The disposition was continued awaiting the BHE and the outcome of [an unrelated criminal charge allegedly committed after Appellant reached the age of majority.]

On January 13, 2023, [Appellant] appeared before the [trial court] for a dispositional hearing. [The trial court entered an order] plac[ing Appellant] in a residential facility through the [Pennsylvania] Department of Human Services. Awaiting transport to state placement, [Appellant was to] remain at the PJJSC and continue therapy through Mercer Hall.

Trial Court Opinion, 4/11/2023, at 3-4. This timely appeal resulted.[3]

On appeal, Appellant presents the following issue for our review:

1. Did the lower court commit reversible error when the court ordered [Appellant] to be placed in a residential treatment facility?

Appellant's Brief at 7.

In sum, Appellant argues:

The record reflects that the trial court abused its discretion. The juvenile was placed in a state residential facility as immediate sanction upon adjudication. There was no consideration given to

_____

[3] Appellant filed a timely notice of appeal, and corresponding concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), on February 10, 2023, or as explained above, within 30 days of the entry of the January 13, 2023 order. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 11, 2023.

any graduated sanctions. The trial court did not take into consideration any other less restrictive options for placement. The juvenile was not given an opportunity to remain in the community after being adjudicated delinquent. The record is [devoid] of any rational as to why a period of probation, upon adjudication, would not serve the juvenile's rehabilitative needs.

*Id.* at 15. Appellant admits, however, he "was placed on interim probation while on deferred adjudication" but asserts that "the next lesser restrictive step should have been to place the juvenile on actual probation upon a finding of adjudication and impose appropriate conditions of probation." *Id.* at 16. Appellant also concedes that the trial court "heard recommendations and argument from probation, the Commonwealth, and defense counsel" and "asked questions and noted that it would consider the testimony with appropriate weight in balancing [Appellant's] rehabilitative needs against its duties to hold [Appellant] accountable and protect the community." *Id.* at 13. Instead, Appellant posits that while he "picked up an adult arrest, the juvenile court failed to await the final disposition of that matter" and "penalized the juvenile for the mere occurrence of an arrest." *Id.* at 16. Moreover, Appellant argues that the trial court also failed "to follow []or implement the recommendations of the court-ordered Behavioral Health Evaluation." *Id.* at 16. As such, Appellant argues that the trial court's disposition was "excessive punishment" that "does not serve the rehabilitative needs of the juvenile or the community." *Id.*

This Court

reviews a juvenile court's dispositional order directing [out-of-home] placement for an abuse of discretion. It is well

settled that, under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. [] In a juvenile proceeding, the hearing judge sits as the finder of fact. The weight to be assigned the testimony of the witnesses is within the exclusive province of the fact finder.

*Interest of D.W.*, 220 A.3d 573, 576 (Pa. Super. 2019) (internal citations, quotations and original brackets omitted).

This Court has further stated:

The purpose of the Juvenile Act, 42 Pa.C.S.A. § 6301(b)(2), is as follows:

(2) Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide *balanced attention* to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.

(Emphasis added). This section evidences the Legislature's clear intent to protect the community while rehabilitating and reforming juvenile delinquents.

[W]e [] elucidate a short list of guidelines to the trial courts and probation offices dealing with these cases.

1) The facts should establish a purposeful and intentional perpetration of actual or feigned acts which, if carried out, would cause injury, disarray and/or psychological disturbance to the persons in the area encompassed by the threats or activity.

2) Each individual, when apprehended, should be quickly but thoroughly evaluated by responsible police investigators, mental health professionals and juvenile correctional experts to determine the appropriate cause of action, determine its potential for success, and evaluate any previous deviance, violent behavior, suicidal thoughts or tendencies and potential for future similar behavior.

> 3) The child's family relationships, stability, deviance, interaction with other children, peers and associates, must be evaluated in terms of their impact on the child's conduct and behavior.
>
> 4) A thorough and accurate compilation of the actual or derivative effect of the behavior on other individuals, the school and community and the security and social service resources of the community must be assessed prior to ultimate disposition of the case.

*In re J.C.*, 751 A.2d 1178, 1181–1182 (Pa. Super. 2000).

When a court commits a juvenile to out-of-home placement, the court is required to state on the record in open court,

> its findings and conclusions of law that form the basis of its decision [], including the reasons why commitment to that type or type of facility was determined to be the least restrictive placement that is consistent with the protection of the public and best suited to the child's treatment, supervision, rehabilitation and welfare.

*Interest of D.W.*, 220 A.3d at 578, *citing* 42 Pa.C.S.A. § 6352(c).  The trial court may also "file of record a brief statement of the reasons for the determination or where in the record such reasons may be found[.]"  *Id.*, *citing* Pa.R.A.P. 1770(f).

At the dispositional hearing on January 13, 2023, the trial judge stated:

> I have an obligation to protect everybody, the 1.5 million [citizens] in the city of Philadelphia, from [Appellant].  Okay?
>
> And when he's on probation, he should follow his probation.  If he thinks his life is being threatened, there's many ways to deal with it.  You don't go on the [lam], pick up a bench warrant, let your GPS [monitor] die, and, then, let alone, you get into a stolen car with someone else which is alleg[ed] right now.  Now, [Appellant's] 18 years old.

*          *          *

Many people are in the wrong place and the wrong time. There's accountability and responsibility.

*          *          *

What I don't understand is why you make – continue to make bad decisions, to get yourself arrested while you're on probation. That's what I don't understand, because that's not normal behavior.

*          *          *

That's not normal behavior from a young man, an adult like you. People don't hide because their lives are threatened but then get involved in making bad decisions and get[] arrested [] in alleged stolen cars. That's the part I don't get.

And you're still on my probation.

*          *          *

I have sympathy for you. But I have no sympathy when people go around and make bad decisions and end up hurting people.

N.T., 1/13/2023, at 10-12; *see also id.* at 17 ("He's been adjudicated on unauthorized use of a motor vehicle, receiving stolen property, conspiracy, robbery, theft, [and] robbery of a motor vehicle. And what does he do? He's caught in a stolen car."). The trial court further noted it could have initially ordered Appellant to be placed in a residential facility but that it "wanted [Appellant] to be successful[,]" "gave him a second a chance" and "put him on probation with GPS" monitoring with "plenty of notice that he was on probation." *Id.* at 16.

In explaining its modification of Appellant's commitment, from interim probation to an out-of-home residential facility, the trial court further opined:

At his initial admission hearing, it was explained to Appellant that the first time he violated [the] conditions of [his ordered, interim probation], he would be adjudicated delinquent and placed [in a residential facility]. At the January 2023 hearing, the trial court heard from Appellant's [p]robation [o]fficer, who testified that he has been in custody at the PJJSC since late-December after violating his GPS restrictions and picking up an adult arrest. Notably, at the admission hearing, Appellant said, "this is my first and last arrest." The [p]robation [o]fficer also testified to the recommendations of Appellant's BHE, which indicated traumatic incidents in his past and the need for outpatient trauma-informed psychotherapy. The [p]robation [o]fficer also indicated that Appellant had run away from his home, [] at the time he was arrested on his adult matter. She made referrals to two residential treatment facilities, but both rejected Appellant due to the open adult matter. While [on interim probation, Appellant ran away from home,] let his GPS monitor die and neither the [p]robation [o]fficer, his family, nor his program advocates could reach him. The [p]robation [o]fficer testified that Appellant was reportedly scared and was receiving threats in his community. The trial court heard from multiple individuals, including Appellant's grandmother, an advocate representative, and the [p]robation [o]fficer. The trial court noted that [Appellant] was [aware] of the consequences of his actions and had been previously informed of what would happen should [h]e violate the conditions of probation. The trial court sympathized with Appellant's situation but noted the court's duty to balance the protection of the community and the needs of Appellant. Appellant has mental health and supervision needs which were not being adequately met in the community. He was put on notice of not being compliant with his interim probation and given an opportunity to remain in the community, but he violated his GPS monitoring and [was arrested as an adult]. While it is commendable that Appellant entered an open admission and started on the road to taking responsibility for his actions at the hearing in August 2022, his subsequent actions and behavior did not indicate sincerity and truthfulness in his claimed intention to do better for himself and others. Appellant did not follow his own advice, "this is my first and last arrest." The record reflects and [supports] the court's disposition of an out-of-home placement as being the least restrictive option, at this time, consistent with the protection of the public and best suited to [] Appellant's welfare, treatment, supervision, and rehabilitative needs as mandated by the Juvenile Act.

Trial Court Opinion, 4/11/2023, at 7-8 (record citations omitted).

Upon review, we agree with the trial court's disposition and conclude that there was no abuse of discretion. In this matter, before disposition, the trial court heard testimony from Appellant's family and probation officer in order to evaluate Appellant's community relationships and their impact on his conduct and behavior. The trial court ultimately determined that Appellant was not successful while on interim probation, having been arrested in a stolen vehicle after being adjudicated delinquent for stealing a different vehicle. Accordingly, the trial court found that the facts as presented showed Appellant's potential for future, similar behavior and also established Appellant's intentional purpose to cause injury and disarray to the public. The trial court ultimately determined that less restrictive alternatives were not effective, and that residential supervision was necessary to protect the public and best suited to Appellant's treatment, rehabilitation, and welfare. Based upon our review of the certified record and applicable law, we discern no trial court error and conclude that Appellant's sole appellate claim lacks merit.

Dispositional order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/4/2024